[Nos. 35947-2-II; 34377-1-II.   Division Two.   March 25, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. PATRICK BOYD DRUM, *Appellant*.

*In the Matter of the Personal Restraint of* PATRICK BOYD DRUM, *Petitioner*.

*Patrick B. Drum*, pro se.

*Jodi R. Backlund* and *Manek R. Mistry* (of *Backlund & Mistry*), for appellant/petitioner.

*Juelie B. Dalzell, Prosecuting Attorney*, and *Thomas A. Brotherton*, for respondent.

¶1 ARMSTRONG, J. — Patrick B. Drum appeals his conviction of residential burglary, arguing that the findings of fact

and evidence were insufficient to support his conviction and that the drug court contract he entered into and then terminated violated his right to due process. He raises additional issues in his statement of additional grounds and in the personal restraint petition consolidated with his appeal. Finding no error, we affirm his conviction and deny his personal restraint petition.

## FACTS

¶2 On the afternoon of September 28, 2004, Drum entered a Port Townsend residence. When the homeowner saw him, she called 911 and fled to a neighbor's house. The neighbor saw Drum come out of the residence and start toward the back door of another home before the police arrived and arrested him.

¶3 At his preliminary court appearance, Drum stated that he did not intend to commit a crime but was highly intoxicated when he entered the residence. At his arraignment, Drum asked the court to either dismiss or reduce the residential burglary charge because there was no evidence he intended to commit a crime within the residence, but the court found probable cause to support the charge. Defense counsel later informed the court that while there was a significant question whether Drum intended to commit a crime within the home, Drum wanted to go through drug court and get treatment. On October 29, 2004, Drum filed a drug court contract, which included the following provisions:

16. That it is the Judge's decision to determine when the defendant has earned the ability to graduate from the Program and to determine when termination from the Program will occur.

17. That if the defendant chooses to leave the Program within the first two weeks after signing the Drug Court Contract, withdrawal will be allowed, this contract will be declared null and void, and the defendant will assume prosecution under the pending charge(s) as if this contract had never

been agreed to. The defendant agrees that this ability to withdraw from the terms of this contract will cease after the period of two weeks following the effective date of this contract and thereafter the defendant shall remain in the Program until graduation unless his/her participation is terminated by the Court. The defendant further agrees that the ability to withdraw from the terms of this contract will cease within the first two weeks, if he/she has committed a willful violation of this contract for which, in the judgment of the Court, he/she may be terminated from the program.

. . . .

19. If the defendant is terminated from the Program, the defendant agrees and stipulates that the Court will determine the issue of guilt on the pending charge(s) solely upon the enforcement/investigative agency reports or declarations, witness statements, field test results, lab test results, or other expert testing or examinations such as fingerprint or handwriting comparisons, which constitutes the basis for the prosecution of the pending charge(s). The defendant further agrees and stipulates that the facts presented by such reports, declarations, statements and/or expert examinations are sufficient for the Court to find the defendant guilty of the pending charge(s).

20. Defendant waives the right to challenge the legality of any investigative or custodial detention, or the legality of any search or seizure, or the sufficiency of Miranda warnings or voluntariness of any statement made, pertaining to any evidence which forms part of the basis for the prosecution of the pending charge(s).

. . . .

**Defendant acknowledges an understanding of, and agrees to waive the following rights:**

1. The right to a speedy trial;

2. The right to a public trial by an impartial jury in the county where the crime is alleged to have been committed;

3. The right to hear and question any witness testifying against the defendant;

4. The right at trial to have witnesses testify for the defense, and for such witnesses to be made to appear at no expense to the defendant; and

5. The right to testify at trial.

Clerk's Papers (CP) at 21-24.

¶4 Drum signed his name below an additional paragraph stating, "My attorney has explained to me, and we have fully discussed all of the above paragraphs. I understand them all and wish to enter into this Drug Court Contract. I have no further questions to ask the Judge." CP at 24.

¶5 Before accepting the contract, the trial court discussed it with Drum:

THE COURT: . . . I've got here a Drug Court Contract, Mr. Drum. Did you review that thoroughly with [defense counsel]?

MR. DRUM: Yes, I did.

THE COURT: Do you understand what you're getting into?

MR. DRUM: Yes, I do.

THE COURT: This is not an easy way to get out of a felony conviction. It requires a lot of effort on your part, and you'll be under the scrutiny of the court for the next at least two years, do you understand that?

MR. DRUM: Yes, I do.

THE COURT: And that jail time will be imposed if you violate the conditions of your agreement with the court, and sometimes you end up getting more jail time in Drug Court than you would by pleading guilty, just because you can't stay straight, you know that?

MR. DRUM: Yes, I do.

Report of Proceedings (RP) at 31-32.

¶6 Forty-two days later, on December 10, 2004, Drum asked to be released from the drug court contract, explaining only, "I think it's a good program, but I just don't think it's for me." RP at 36. When the trial court asked defense counsel whether he had talked to Drum about his decision, Drum interjected that he was not going to change his mind.

¶7 After initially setting Drum's case on the jury trial track, the court realized its error and set the matter for a bench trial. Over the State's objection, the court invited argument at the trial, and defense counsel asserted that Drum was guilty of first degree criminal trespass at most because his extreme intoxication negated the inference that he entered the residence with the intent to commit a crime against persons or property therein.

¶8 The trial court did not find that the police report adequately set forth the elements of intoxication. While the report said the arresting officer " 'immediately smelled the strong odor of what appeared to be spray paint' " emanating from Drum, there was "not much discussion about Mr. Drum being intoxicated. Although we believe that he probably was under the influence of having huffed spray paint." RP at 69. The court then stated that it would infer Drum's intent to commit a crime by his entry into the residence because there was no other reason for him to be there. After Drum acknowledged that it was too late for him to explain that he was in the residence because he wanted to use the telephone, the court replied that there was no such explanation in the police report. The court found that the police report established beyond a reasonable doubt that Drum was guilty of residential burglary. The matter proceeded to sentencing, where Drum explained:

> I was very intoxicated this day, and I was asking this lady to use the phone. I'm not going to say that my record doesn't show cases where I've entered people's houses high on intoxicants. I've definitely got to quit doing that stuff, 'cause it puts my mind in a state where I just have no respect for property or things. But, at the time when she confronted me, my intent was to ask if I could use the phone, 'cause I was high and lost. It's too late for that. I just—I don't know if there's an appeal on this, because I decided to go to Drug Court. That's kind of my fault. That's the only thing I'd like to say. I think it's too late for an argument, but I think it was just a Criminal Trespass.

RP at 72. The court imposed a midrange sentence of 13 months. The court subsequently entered findings of fact and conclusions of law, which included, "Defendant entered

with intent to comitt [sic] a crime in the residence." Personal Restraint Pet. at 2; RP at 69.

¶9 Drum filed a personal restraint petition within one year of his conviction, alleging in part that he had been denied his right to appeal. The State conceded that issue, and we ordered that a direct appeal be initiated and that counsel be appointed. We consolidated the appeal with Drum's petition. Drum raises additional issues in a pro se statement of additional grounds.

¶10 The principal issues are whether Drum can challenge the drug contract's provision that the evidence in the police reports is sufficient to convict him of burglary, and whether the drug contract is, nevertheless, unenforceable because it amounts to a guilty plea and the trial court did not fully advise him of the consequences.

## ANALYSIS

### I. Sufficiency of the Evidence

¶11 Drum raises several issues related to the sufficiency of the evidence supporting his conviction. He claims that the State failed to prove and the trial court failed to find that he intended to commit a crime against people or property within the residence, that the trial court unlawfully used the permissive inference from RCW 9A.52.040 as the sole and sufficient evidence of intent, and that the court thereby found guilt based on a mandatory presumption. He raises these issues without acknowledging the backdrop against which the trial court found him guilty. Under the drug court contract, Drum stipulated that the evidence was sufficient to find him guilty of the crime charged.

¶12 We have examined the sufficiency of the evidence supporting the defendant's conviction where his drug court contract did not contain a sufficiency-of-the-evidence provision. *State v. Colquitt*, 133 Wn. App. 789, 795, 137 P.3d 892 (2006). As support, we cited a Supreme Court opinion discussing deferred prosecution agreements, reasoning that before the statutory prerequisites for such agreements were amended to require a participant to stipulate to the suffi-

ciency of the facts, the court was not foreclosed from examining the sufficiency of the evidence presented in a postrevocation trial. *Colquitt*, 133 Wn. App. at 795 (citing *Abad v. Cozza*, 128 Wn.2d 575, 587-88, 911 P.2d 376 (1996)).

¶13 The logical extension of *Colquitt* is that because Drum stipulated to the sufficiency of the facts in his drug court contract, we cannot now review the issues related to the sufficiency of the evidence and the factual findings supporting his conviction. In his reply brief, however, Drum asserts that his stipulation to law is not binding on this court, citing *State v. Vangerpen*, 125 Wn.2d 782, 792, 888 P.2d 1177 (1995), and *Barnett v. Hicks*, 119 Wn.2d 151, 161, 829 P.2d 1087 (1992). In *Vangerpen*, the court determined that the defendant had been convicted of a crime for which he had not been charged, and the issue became what remedy was appropriate. Although the defendant and the State agreed that the Supreme Court should remand for entry of an attempted second degree murder conviction, the court declined to accept their stipulation, reasoning that a stipulation as to issues of law was not binding on the court. *Vangerpen*, 125 Wn.2d at 792. In *Barnett*, the Supreme Court rejected the parties' attempt to stipulate to the nature and scope of review of an arbitrator's decision, finding that litigants cannot stipulate to jurisdiction or create their own boundaries of review. *Barnett*, 119 Wn.2d at 161. As support, the court cited analogous authority that stipulations of law are not binding on the court. *Barnett*, 119 Wn.2d at 161.

¶14 Drum's stipulation to the sufficiency of the evidence is not analogous to the *Vangerpen* and *Barnett* stipulations. Rather, it is similar to stipulations that are now required as part of a deferred prosecution. *See* RCW 10.05.020(3), (4). Division One has held that courts may apply the principles of chapter 10.05 RCW, which governs deferred prosecutions, to drug court prosecutions. *State v. Melick*, 131 Wn. App. 835, 844-45, 129 P.3d 816, *review denied*, 158 Wn.2d 1021 (2006); *see also State v. Cassill-Skilton*, 122 Wn. App. 652, 658, 94 P.3d 407 (2004) (Division Two finding that

deferred prosecution statutes apply by analogy to drug court proceedings). *But see State v. DiLuzio,* 121 Wn. App. 822, 830, 90 P.3d 1141 (2004) (Division Three concluded that deferred prosecutions and drug court proceedings are not analogous).

¶15 Deferred prosecution under chapter 10.05 RCW is designed to encourage treatment of culpable people whose wrongful conduct is caused by a treatable condition, such as alcoholism. *City of Richland v. Michel,* 89 Wn. App. 764, 768, 950 P.2d 10 (1998). Deferred prosecution gives these defendants the opportunity to avoid conviction if they successfully complete treatment. *Michel,* 89 Wn. App. at 769. The petitioner executes a statement acknowledging his or her rights, stipulates to the admissibility and sufficiency of the facts in the police report, and acknowledges that the statement will be entered and used to support a finding of guilt if the deferred prosecution is revoked. RCW 10-.05.020(3). The incentive that encourages successful completion of treatment is the possibility that failure will result in prosecution and conviction of the original crime charged. *State v. Shattuck,* 55 Wn. App. 131, 135, 776 P.2d 1001 (1989). The deferred prosecution alternative is "limited to only those who have no reason to argue their innocence." *Shattuck,* 55 Wn. App. at 135. Accordingly, the *Shattuck* court held that an appellant waived his right to raise defenses to his driving under the influence prosecution by stipulating to a deferred prosecution. *Shattuck,* 55 Wn. App. at 133.

¶16 RCW 2.28.170(2) enables counties to establish drug courts "to achieve a reduction in recidivism and substance abuse among nonviolent, substance abusing felony and nonfelony offenders . . . by increasing their likelihood for successful rehabilitation through early, continuous, and intense judicially supervised treatment; mandatory periodic drug testing; and the use of appropriate sanctions and other rehabilitation services." In *Colquitt,* we characterized drug court as a "specialized deferred prosecution wherein the prosecution does not

proceed and the information is dismissed upon successful completion." *Colquitt*, 133 Wn. App. at 793 n.2.

¶17 Here, as under the deferred prosecution statute, the defendant's incentive for participating in the program is dismissal of the charges. *See State v. J.V.*, 132 Wn. App. 533, 537, 132 P.3d 1116 (2006). In return, he cannot protest his innocence of those charges, as Drum recognized when he stated during his bench trial that it was "too late" for him to try to explain his presence in a stranger's residence. RP at 70. In *Melick*, Division One extended the analysis in *Shattuck* to drug court proceedings, holding that the defendant's stipulation to the use of police reports waived all subsequent factual, legal, or procedural issues he might raise, except for those related to the validity of the stipulation itself. *Melick*, 131 Wn. App. at 844-45.

¶18 Drum stipulated not only that the trial court would determine guilt based solely on the police report but also that the evidence in the report was sufficient to find him guilty of residential burglary. And, other than his argument that the contract was equivalent to a guilty plea, Drum makes no challenge to the contract. We agree with Drum that his attempt to litigate guilt comes too late. By failing to opt out of the contract within two weeks, Drum waived his right to raise any evidentiary issues.

## II. Due Process

¶19 Drum argues that his drug court contract was equivalent to a guilty plea and, as such, must meet due process standards. Specifically, he contends that the record must show that he entered the contract intelligently and voluntarily and with full knowledge of its consequences. In his reply brief, Drum lists the consequences of which he remained ignorant as the standard sentence range, the financial penalties, and the term of community custody.

¶20 Due process requires the trial court to determine that the defendant is entering his guilty plea intelligently and voluntarily. *State v. Barton*, 93 Wn.2d 301, 304, 609

P.2d 1353 (1980). In addition to these constitutional requirements, CrR 4.2 requires the court to determine that the defendant understands the consequences of his plea. *Barton*, 93 Wn.2d at 304.

¶21 In *Colquitt*, we stated that a drug court contract is not equivalent to a guilty plea, citing *Abad* and *State v. Higley*, 78 Wn. App. 172, 902 P.2d 659 (1995). *Colquitt*, 133 Wn. App. at 795. As explained earlier, the defendant in *Colquitt* did not stipulate to the sufficiency of the evidence in his drug court contract, and the deferred prosecution at issue in *Abad* took place before RCW 10.05.020 was amended to require a defendant to so stipulate. *Colquitt*, 133 Wn. App. at 795; *Abad*, 128 Wn.2d at 580. In *Higley*, we explained why agreeing to deferred prosecution is not the same as pleading guilty: to accept deferred prosecution is to leave adjudication by plea or trial to a later time, whereas to plead guilty is to submit to adjudication by plea, provided that the court accepts the plea. *Higley*, 78 Wn. App. at 187-88. Because the defendant in *Higley* did not plead guilty by agreeing to a deferred prosecution, he did not acquire the due process rights of one who does. *Higley*, 78 Wn. App. at 188.

¶22 Courts have continued to hold that a deferred prosecution is not akin to a guilty plea despite the amendment of RCW 10.05.020 that requires a defendant to stipulate that the evidence is sufficient to find him guilty. Division Three has explained that deferred prosecution is not tantamount to a guilty plea but is a form of preconviction sentencing or probation. *Michel*, 89 Wn. App. at 769. The petitioner executes a statement that acknowledges his rights, stipulates to the admissibility and sufficiency of the facts in the police report, and provides that the statement will be entered and used to support a finding of guilt if the deferred prosecution is revoked. *Michel*, 89 Wn. App. at 769. Upon completing the deferred prosecution treatment plan, the charge is dismissed. *Michel*, 89 Wn. App. at 769.

¶23 The court rejected Michel's contention that the deferred prosecution agreement did not give him fair notice of

a possible enhanced sentence, observing that unlike the case with guilty pleas, the deferred prosecution statute does not require written notice of all consequences of the agreement. *Michel*, 89 Wn. App. at 770. It compared CrR 4.2(d) and *State v. Ross*, 129 Wn.2d 279, 284, 916 P.2d 405 (1996), which require direct consequences of a guilty plea to be communicated to a defendant before entry of the plea, with RCW 10.05.020, which requires only that the defendant be advised of his rights as an accused and acknowledge the admissibility of the stipulated facts in any subsequent criminal hearing. *Michel*, 89 Wn. App. at 770. It also observed that "[a]s with juvenile diversion agreements, the procedure is designed to be somewhat informal." *Michel*, 89 Wn. App. at 770 (citing *State v. Quiroz*, 107 Wn.2d 791, 799, 733 P.2d 963 (1987)).

¶24 We have also held that a deferred prosecution is not equivalent to a guilty plea even though the accused must stipulate to the admissibility and sufficiency of the facts in the police report. *City of Bremerton v. Tucker*, 126 Wn. App. 26, 32, 103 P.3d 1285 (2005). In *Tucker*, we agreed with *Michel* that the deferred prosecution statute does not require written notice of all consequences of the agreement. *Tucker*, 126 Wn. App. at 33 n.8.[1]

¶25 Here, as with deferred prosecutions, the drug court contract left adjudication by trial to a later time. Drug court procedures have almost no statutory guidelines and are perhaps even more informal than deferred prosecutions. There are clearly no court rules that govern them in the same manner that CrR 4.2 governs guilty pleas.

¶26 Although Drum stipulated to the sufficiency of the evidence, he had the ability to "opt out" of the contract for a

---

[1] Similarly, Division One has held that a deferred prosecution is not equivalent to a guilty plea or conviction even when the accused stipulates to the admissibility and sufficiency of the facts in a police report. *City of Kent v. Jenkins*, 99 Wn. App. 287, 290, 992 P.2d 1045 (2000). *But see State v. Wiley*, 26 Wn. App. 422, 425-26, 613 P.2d 549 (1980) (Division One held that stipulated facts trial not akin to guilty plea because court determined guilt or innocence and defendant could offer evidence and present witnesses). Even if *Wiley* is relevant in this context, we see no violation thereof since the trial court considered Drum's defense and independently determined the issue of guilt.

jury trial, and when he missed the opt-out deadline, his termination resulted in a bench trial. In rejecting Drum's argument that his drug court contract was the equivalent to a guilty plea, the trial court stated, "The people who enter Drug Court get a huge benefit, if they follow through. And doing that . . . they give up the right to a jury trial, they give up the right to hear and question witnesses, and they agree to . . . a trial based on the police reports, or the investigative officer's reports. While they do say there's sufficient evidence to find guilt, a judge independently reviews the evidence against him—as I did in Mr. Drum's case—to determine whether there was sufficient evidence for guilt." RP at 99-100. We reject Drum's argument that a drug court contract is equivalent to a guilty plea and find no due process violation here.

¶27 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

VAN DEREN, A.C.J., and QUINN-BRINTNALL, J., concur.

Review granted at 164 Wn.2d 1025 (2008).