FILED
COURT OF APPEALS
DIVISION II

2013 MAR 19 AM 7:38

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>ERIC ORVILLE WALDENBERG,<br><br>Appellant. | No. 42026-1-II<br><br><br><br>PART PUBLISHED OPINION |

HUNT, J. — Eric Orville Waldenberg appeals his standard-range sentence for second degree burglary. He argues that the trial court erred in concluding that it lacked authority to refer him to drug court without the State's recommendation and by failing to consider personal factors in support of his request for an exceptional sentence downward. In his Statement of Additional Grounds (SAG), Waldenberg asserts that (1) the language in the Jefferson County Drug Court policy is void for vagueness; (2) the trial court's denial of his petition for drug court denied him due process and equal protection under the Constitution; (3) the trial court erred in allowing the State to determine his offender score; (4) the trial court erred in concluding that it lacked discretion to grant a downward departure from the sentencing guidelines; and (5) "other options"[1] are available to the appellate court. Holding that the trial court did not err in denying

---

[1] SAG at 3.

Waldenberg's prosecutor-opposed request for drug court and that his other assertions lack merit, we affirm his standard-range sentence.

FACTS

A. BACKGROUND

Eric Waldenberg was addicted to narcotics, alcohol, and gambling. In 2004, he pleaded guilty to failing to return rental property, criminal mischief, theft, and 16 counts of burglary in Great Falls, Montana, for which he served 5 years in prison. In June 2009, he was paroled from Montana to Jefferson County, Washington, where he lived with his parents and continued to receive supervision by Washington's Department of Corrections (DOC).

Three months later, Waldenberg was injured in a motorcycle accident, which police suspected involved the use of alcohol. Waldenberg underwent an alcohol and drug assessment and was recommended for an intensive outpatient and aftercare program, focusing on alcohol and opiate treatment, and a co-occurring disorder intensive treatment (CODIT) program. In early 2010, CODIT discharged him for noncompliance with program policies.

In April 2010, police responded to a nighttime burglary report and found Waldenberg with a pry bar and a flashlight inside a beauty salon and arrested him. Waldenberg told Deputy Ryan Menday that he was "down on his luck" and that he was "looking to steal money from the salon." Clerk's Papers (CP) at 86. DOC Officer Kevin Isett interviewed Waldenberg, noting that he "appeared remorseful and disheartened about the incident but seemed to be taking responsibility for his actions." CP at 63. Waldenberg told Isett that he had recently become involved with a woman from Walla Walla, did not have the money to travel there, was ashamed

to admit that to her, and had broken into the salon to obtain the money for a trip to see her. Isett did not note any apparent drug or alcohol influence.

B. PROCEDURE

The State charged Waldenberg with second degree burglary, third degree malicious mischief, and making or having burglar tools. According to the police incident report, the salon burglary was alcohol related. Before trial, Waldenberg filed a petition for drug court and a request for an exceptional sentence downward from the standard sentencing range. The State opposed and the trial court denied Waldenberg's drug court petition. Following a bench trial, the court found Waldenberg guilty of second degree burglary and making or having burglar tools; it dismissed the malicious mischief charge for insufficient evidence.

At sentencing, Waldenberg agreed that his offender score was more than nine based on his prior Montana convictions; and he petitioned for drug court. The State opposed Waldenberg's petition and argued that admission to drug court is not allowed without the State's recommendation. The State did, however, recommend a prison-based drug offender sentencing alternative (DOSA), RCW 9.94A.660.[2] Noting that admission to drug court is available only with the State's recommendation, the trial court denied Waldenberg's drug court petition and

---

[2] The purpose of DOSA, like drug court, is to provide meaningful treatment and rehabilitation incentives for those convicted of drug crimes. *State v. Grayson*, 154 Wn.2d 333, 337, 111 P.3d 1183 (2005).

sentenced him instead under DOSA.[3]

The trial court denied Waldenberg's request for an exceptional sentence because he had failed to provide a factor justifying a downward departure from the standard sentence range that was directly related to the crime charged.[4] Nevertheless, even though Waldenberg's presumptive standard mid-range sentence was 59.5 months of confinement, based on his offender score in excess of 9, the trial court sentenced him to a DOSA standard-range sentence of 29.75 months. Waldenberg appeals his standard-range sentence.

## ANALYSIS

### DRUG COURT PETITION

Waldenberg argues in his counsel's brief and asserts in his SAG that the trial court erred in concluding that it lacked authority to refer him to drug court without the State's recommendation. We disagree.

Whether the trial court can refer a convicted defendant to drug court without the State's recommendation is a question of law, which we review de novo. *State v. DiLuzio*, 121 Wn. App.

---

[3] In so doing, the trial court commented:
> [Waldenberg is] probably not going to commit another crime if he's under the supervision of DOC and he's really into treatment. And so I was thinking hey, Drug Court would be a great thing for him, but I can't order you into drug court, and I'll make that a finding specifically. [T]he judicial branch of the government doesn't control whether you go into drug court. That's a decision made by the executive branch, and that's the Prosecutor's office, whether it's pre-conviction or post-conviction.

VRP (Apr. 6, 2011) at 60.

[4] The trial court examined (1) Waldenberg's strong family and community support, (2) the interruption to his rehabilitation efforts that would result from imprisonment, and (3) that Montana had imposed concurrent sentences for his prior convictions; and it concluded that none of these factors justified a downward departure.

822, 824, 90 P.3d 1141 (2004) (citing *Smith v. Bates Technical Coll.*, 139 Wn.2d 793, 800, 991 P.2d 1135 (2000)). RCW 2.28.170, which authorizes counties to establish drug courts, does not answer this question. Subsection (3)(b) establishes "minimum requirements for the participation of offenders in the program" and allows counties to "adopt local requirements that are more stringent than the minimum"; but it does not specify who determines whether an offender meets those minimum requirements. RCW 2.28.170(3)(b).

Jefferson County's drug court policy manual includes several "local requirements" that are more stringent than the minimum listed in RCW 2.28.170. For example, Jefferson County's drug court policy manual provides: "Persons charged with a non-violent offense may enter the Drug Court program prior to conviction through an agreement between the individual and his/her attorney, if represented by counsel, *and the prosecutor's office.*" Suppl. CP at 223 (emphasis added). The manual also underscores that the prosecutor retains discretion whether to refer a defendant for a substance abuse assessment, a necessary prerequisite[5] for entry into the county's

---

[5] Jefferson County's manual provides that, to qualify for the drug court program, "[t]he individual must be: Diagnosed with a drug abuse/dependency—by the authorized assessment provider." Although Waldenberg has been diagnosed by other medical professionals in the past, the drug court manual requires that the assessment be done by an "authorized" provider, which in turn requires a defendant first to receive a referral recommendation from the prosecutor. CP at 226.

drug court program.[6]

Although not yet addressing the specific question before us here,[7] our Supreme Court has emphasized generally that prosecutors enjoy broad discretion in making charging decisions, including the discretion to determine what charges to file, when to file them, and, generally, whether to amend them. *See, e.g., State v. Korum*, 157 Wn.2d 614, 141 P.3d 13 (2006). Eight years ago, however, Division Three of our court held that "the prosecutor retains executive discretion to decide whether to recommend referral to drug court" under Spokane County's drug

---

[6] More specifically, Jefferson County's drug court manual provides:
> Potential Drug Court participants may be referred to the program using the following process:
> 1. Charges are filed by the prosecutor
> 2. First appearance in court (or at subsequent appearance)
> *The Court may refer the Defendant for a substance abuse assessment if:*
>     (a) The charge is listed as "eligible" under Drug Court criteria AND there is indication of substance abuse by the Defendant, and
>     *(b) Referral is recommended by the Prosecutor, and approved by the Court.*

Suppl. CP at 230 (emphasis added).

[7] Although the Supreme Court reviewed a Division Two drug court case two years ago, it did not address the issue that Waldenberg raises in the instant appeal. *See State v. Drum*, 143 Wn. App. 608, 181 P.3d 18, *aff'd on other grounds*, 168 Wn.2d 23, 225 P.3d 237 (2010). We did not address whether the State's acquiescence is a necessary prerequisite for allowing an offender to participate in drug court. Rather, we addressed whether Drum could challenge the drug court contract's provision that the evidence in the police reports was sufficient to convict him of burglary, and whether the drug contract was, nevertheless, unenforceable because it amounted to a guilty plea where the trial court did not fully advise him of the consequences. *Drum*, 143 Wn. App. at 614.

court policies. *DiLuzio*, 121 Wn. App. at 823.[8] Consistent with our Supreme Court's later *Korum* decision, Division Three noted:

> "[I]t remains a prosecutorial duty to determine the extent of society's interest in prosecuting an offense." *State v. McDowell*, 102 Wn.2d 341, 345, 685 P.2d 595 (1984). Indeed, we give prosecutors discretion to decide whether to seek the death penalty. *State v. Pirtle*, 127 Wn.2d 628, 642, 904 P.2d 245 (1995).

*DiLuzio*, 121 Wn. App. at 827-28. Finding *DiLuzio's* rationale persuasive, we adopt and apply it here.[9]

Division Three's analysis of DiLuzio's ineligibility for drug court absent the prosecutor's assent derived primarily from Spokane County's drug court manual local rules. These local rules specifically provided that "[t]he Prosecutor makes the initial determination as to whether an individual is eligible for Drug Court." *DiLuzio*, 121 Wn. App. at 827 (internal quotation marks omitted). The court also highlighted two other specific eligibility criteria in the manual's rules that DiLuzio failed to meet: (1) having a demonstrable Spokane area residence, and (2) having no hold from another jurisdiction, either within Washington or from another state. *DiLuzio*, 121 Wn. App. at 827. Ultimately, Division Three held:

> Spokane County's practice of allowing the prosecutor to make initial determinations of drug court eligibility does not constitute an unconstitutional

---

[8] The prosecutor denied referral to drug court on DiLuzio's possession and theft charges because the DOC had a hold on him and he did not demonstrate he had a Spokane area residence, both of which were justifiable reasons from Spokane's drug court manual to disqualify him for drug court. *DiLuzio*, 121 Wn. App. at 827.

[9] Therefore, we reject and do not address Waldenberg's attempt to analogize to deferred prosecutions other than to distinguish the following cases: In *State v. Melick*, Division One limited its chapter 10.05 RCW deferred prosecution principles analogy to drug court to the process for terminating an offender already enrolled in a drug court program; it did *not* address whether the superior court can *initially refer* an offender to drug court without the prosecution's assent. 131 Wn. App. 835, 129 P.3d 816, *review denied*, 158 Wn.2d 1021 (2006).

delegation of judicial power to the prosecutor. The separation of powers doctrine is not violated.

*DiLuzio*, 121 Wn. App. at 828.[10]

Like Division Three's reference to Spokane County's drug court policy manual, we refer here to Jefferson County's drug court policy manual to resolve Waldenberg's challenge to the trial court's denial of his request for entry into drug court without the prosecutor's assent. As Division Three held in *DiLuzio*, we similarly hold here that under Jefferson County's drug court policy, it is within the prosecutor's discretion whether to remove a charged offender from the regular course of prosecution and punishment and to refer him instead to drug court, which allows the offender to remain in the community while he attempts to meet the challenges of drug court. Accordingly, we further hold that the trial court did not err in denying drug court to Waldenberg without the prosecutor's affirmative recommendation; and we affirm Waldenberg's standard range sentence.

---

[10] Division Three further explained its rationale as follows:

> The purpose of drug court is best met when the prosecutor makes the initial eligibility determination. Following arrest, the prosecutor is more involved with the defendant to best assess his or her eligibility. Once a referral is made, the drug court judge reviews the drug court petition, presides over an initial hearing, orders a pre-drug court evaluation by a certified drug treatment provider, and determines whether there is a reasonable basis to believe that the offender can successfully complete the drug court program. The judge also monitors the offender's progress. This active involvement coincides with the judiciary's role as set forth in our Constitution. Moreover, Division Two of this court has held that the drug court statute "does not create . . . a 'court' to which all state citizens have a right of access." *State v. Little*, 116 Wn. App. 346, 349, 66 P.3d 1099, *review denied*, 150 Wn.2d 1019 (2003).

*DiLuzio*, 121 Wn. App. at 828.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

REQUEST FOR EXCEPTIONAL SENTENCE DOWNWARD

Waldenberg next argues that (1) RCW 9.94A.535[11] does not require that a factor justifying a downward departure be related to the charged crime; and (2) therefore, the trial court erred in concluding that it could not impose an exceptional sentence downward based on factors unrelated to the underlying crime. This argument fails.

A standard range sentence is generally not appealable. RCW 9.94A.585(1). Nevertheless, a defendant may appeal the procedure by which the trial court imposed his sentence. *State v. Ammons*, 105 Wn.2d 175, 183, 713 P.2d 719, 718 P.2d 796 (1986). When the sentencing court declines to impose an exceptional sentence downward, our review is limited to instances where the court refused to exercise discretion at all or has relied on an impermissible basis. *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997), *review denied*, 136 Wn.2d 1002 (1998). But where the sentencing court considered the facts and found no basis for an exceptional sentence, it has exercised its discretion, and the defendant cannot appeal that ruling. *Garcia-Martinez*, 88 Wn. App. at 330. Such is the case here.

Waldenberg does not argue that the trial court denied his petition on an impermissible basis. Instead, he argues that, despite the trial court's having considered a number of factors, including Waldenberg's family and community support, his addiction recovery, and prior

___

[11]The legislature amended RCW 9.94A.535 in 2011, LAWS OF 2011, ch. 87, § 1 and in 2010, LAWS OF 2010, ch. 274, § 402, ch. 227 § 10, and ch. 9, § 4. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

concurrently-served Montana sentences, the trial court erred in concluding that it lacked authority to impose an exceptional sentence based on factors not related to the crime. The record on appeal shows that the trial court exercised its broad discretion in refusing Waldenberg's request for an exceptional sentence downward and imposing a DOSA sentence, which is not subject to challenge on appeal.

STATEMENT OF ADDITIONAL GROUNDS[12]

Finally, Waldenberg asserts that the trial court erred in relying on the offender score that the State offered. We generally do not consider on appeal arguments not presented to the trial court. *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 290, 840 P.2d 860 (1992). And we can refuse to review any claim of error that was not raised in the trial court. RAP 2.5(a); *Felsman v. Kessler*, 2 Wn. App. 493, 498–99, 468 P.2d 691, *review denied*, 78 Wn.2d 994 (1970). Waldenberg not only failed to raise this argument at his sentencing hearing below, but also expressly agreed that his offender score was more than nine based on his prior Montana convictions. *State v. Nitsch*, 100 Wn. App. 512, 518-19, 997 P.2d 1000, *review denied*, 141 Wn.2d 1030 (2000) (defendant's affirmative acknowledgement of offender score and failure to contest below waived the issue on appeal). Accordingly, we do not address this alleged offender score error. RAP 2.5(a).

---

[12] In his SAG, Waldenberg asserts three separate grounds for reversing the trial court's denial of his drug court petition and one ground for reversing the trial court's denial of his exceptional sentence petition. We have already addressed these issues in the earlier part of our analysis of the issues raised in counsel's brief.

On the first page of his SAG, Waldenberg asserts that the "Jefferson County [D]rug [C]ourt policy" is unconstitutionally vague, and that "other options" are available to our court. SAG at 3. But he fails to develop or to explain these assertions later. Although Waldenberg is not required to provide references to the record and citations to authorities, RAP 10.10(c) does require him to inform us of the "nature and occurrence of alleged errors." Because Waldenberg's claims are too vague for us to us to review, we do not address them.

We affirm the trial court's imposition of a standard range DOSA sentence.

_____
Hunt, J.

We concur:

_____
Johanson, A.C.J.

_____
Bridgewater, J.P.T.