# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON , Respondent, v. PABLO LARA BELLON, Appellant. | No. 80647-5-I DIVISION ONE UNPUBLISHED OPINION FILED: February 3, 2020 |

APPELWICK, C.J. — Bellon appeals his convictions for assault of a child in the second and third degrees. He argues that the State presented insufficient evidence to support his convictions. He contends that the diversionary contract he entered into with the State is unenforceable because he did not knowingly, intelligently, and voluntarily waive his constitutional rights. He also argues that the trial court failed to exercise discretion in considering his request for an exceptional sentence. Last, he seeks relief from certain LFOs. We affirm his conviction and sentence, but remand to have the criminal filing fee and the interest accrual on his nonrestitution LFOs stricken.

## FACTS

Pablo Bellon and his ex-wife have three children. While the children were at his home, Bellon became angry with his youngest daughter for not moving fast enough when he told her to brush her teeth. He picked up the child by her neck and began shaking her. The child told the responding officer that she could not

breathe because Bellon was squeezing her neck so hard. Bellon briefly put the child down turning her over, squeezing her tummy, and spanking her. The child was still feeling pain in her stomach when she spoke to the responding officer.

The child's older brother, who had been sitting on the couch, got up and yelled at Bellon to stop hurting his sister. He walked over to Bellon and pushed him to get him to stop. Bellon let go of the child, who walked off toward her room. The brother then called their mother to pick them up.

The mother called the police and met them near Bellon's apartment. The police interviewed the mother and children and called for medical support to have the victim evaluated. Medical staff indicated that the victim appeared to be fine but should follow up with a doctor. The children both reported the events above to the responding officer. The older brother added that their father had been drinking all day and appeared to "snap." The responding officer called in another officer, knocked on Bellon's door, and placed him under arrest.

In a later interview with police, the victim largely reiterated what she had said on the night of the incident. When asked what happened, she said that her father had picked her up by the neck and choked her. When asked what choking means, she said, "Like, squeezed your neck really hard so you couldn't breathe." When asked if she could breathe or scream when Bellon first picked her up, she said, "Yea," then "Kind of." She said that her neck was sore for the rest of the week. She said that her father had squeezed her stomach and that it hurt for a couple of days afterward.

The State charged Bellon with assault of a child in the second and third degrees. He chose to enter into a diversionary contract with the State. Under the contract, the State would dismiss the charges if Bellon successfully completed the "Friendship Diversion Program." If, however, Bellon was unsuccessful in completing the program, he agreed that the State would recommence prosecution. He further agreed that the court would determine his guilt or innocence solely on the basis of law enforcement and investigatory agencies' reports on the incident. He waived any objections to the admissibility of this evidence.

His declaration further stated,

> I understand that, by this process, I am giving up the following constitutional rights: the right to a jury trial; the right to a speedy and public trial by an impartial jury in the county where the crime(s) is/are alleged to have been committed; the right to hear and question the witnesses against me; the right to call witnesses [o]n my own behalf and no at expense to me; the right to testify or not to testify; the right to appeal a determination of guilty after trial; and the presumption of my innocence until the charge(s) has/have been proven beyond a reasonable doubt.

Prior to signing off on the agreement, the trial court questioned Bellon on whether he understood that he was waiving his rights. When asked if he had discussed the agreement with his attorney, he replied, "In great detail." When asked if he understood that he would not be able to present evidence at a potential trial, he replied, "Yes." When asked if he understood that he was waiving his right to a speedy trial, he again replied in the affirmative.

On September 6, 2017, Friendship Diversion Services informed the State that Bellon had failed to comply with the requirements of the diversion program by failing to report in person to the program as required and failing to pay fees. The

State moved to revoke the diversion. After a hearing, the trial court found that Bellon had violated the diversion agreement and granted the State's motion to revoke the diversion.

The trial court held a stipulated facts bench trial. After hearing argument from both sides, the court found "beyond a reasonable doubt that Mr. Bellon is guilty of assault of a child in the second degree domestic violence" and "that Mr. Bellon is guilty of the crime of assault of a child in the third degree domestic violence."

Bellon requested an exceptional sentence below the standard range. He urged the trial court to consider the unique nature of the proceeding, the progress he made in the diversionary program, and various letters of support from family and friends. After a lengthy discussion of the law, the court determined that there was no basis for an exceptional sentence. The court instead sentenced Bellon to 31 months of confinement, which was on the low end of the standard sentence range. The court also ordered Bellon to pay a $500 victim assessment fee, $200 criminal filing fee, and $100 deoxyribonucleic acid (DNA) collection fee.

Bellon appeals.

DISCUSSION

Bellon makes four arguments. First, he argues that the State failed to present sufficient evidence to prove his guilt beyond a reasonable doubt. Second, he argues that his diversion contract was invalid because he did not knowingly, intelligently, and voluntarily waive his constitutional rights. Third, he argues that the trial court failed to exercise appropriate discretion in considering his request

4

for an exceptional sentence below the standard range. Last, he argues that he should be relieved of certain legal financial obligations (LFOs).

## I. Sufficiency of Evidence

Bellon contends that the State did not present sufficient evidence to support his convictions.

Sufficiency of the evidence is a question of constitutional law that this court reviews de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). The State is required to prove all elements of the charged offense beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Evidence is sufficient to support a conviction if, "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)), abrogated on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006).

When a defendant challenges the sufficiency of the evidence, they admit the truth of all of the State's evidence. State v. Cardenas-Flores, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). In reviewing the sufficiency of the evidence, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). In conducting this review, circumstantial evidence and direct evidence carry equal weight. State v. Goodman, 150 Wn.2d 774, 781, 83

P.3d 410 (2004). Specific criminal intent of the accused may be inferred from the conduct where it is plainly indicated as a matter of logical probability. Id.

## A. Assault of a Child in the Second Degree

The State charged Bellon with assault of a child in the second degree by strangulation. To sustain a conviction for this charge, the State was required to prove that Bellon is over 18 years old and that he assaulted a victim under 13 years old by strangulation. RCW 9A.36.021(1)(g); RCW 9A.36.130(1)(a). "Strangulation" means to "compress a person's neck, thereby obstructing the person's blood flow or ability to breath, or doing so with the intent to obstruct the person's blood flow or ability to breathe." RCW 9A.04.110(26). A person's blood flow or ability to breath need not be completely obstructed under the statute. See State v. Rodriguez, 187 Wn. App. 922, 935, 352 P.3d 200 (2015). It needs to be hindered or blocked only to some degree. Id.

Bellon contends that the State failed to prove that Bellon strangled his daughter. His argument focuses primarily on the victim's interview with the police after the incident. When asked if she could breathe after her father picked her up by the neck, she responded, "Yea." However, when asked to clarify, she said, "Kind of." She then said, "[H]e picked me up by the neck and . . . then he choked me." When asked what choking means, she said, "Like squeezed your neck really hard so you couldn't breathe." This evidence is sufficient for a rational trier of fact to conclude that the victim's ability to breathe was partially obstructed.

We hold that the State presented sufficient evidence to sustain Bellon's conviction for assault of a child in the second degree.

B. Assault of a Child in the Third Degree

The State also charged Bellon with assault of a child in the third degree. To sustain this charge, the State was required to prove that Bellon was over the age of 18, that his victim was under the age of 13, and that Bellon, with criminal negligence, caused bodily harm to the victim accompanied by substantial pain that extended for a period sufficient to cause considerable suffering. RCW 9A.36.031(f); RCW 9A.36.140(1).

Bellon contends that the State failed to prove that the victim was in substantial pain or considerable suffering. He asserts that the State presented no evidence of actual injury, or severity or duration of pain. The record does not contain evidence of any visible injuries to the victim. However, the record does contain evidence of the duration of pain. In her interview with police, Bellon's victim said that her "tummy and back" were sore for "a few days," and that her neck was sore for the "the rest of the week." We have previously held that pain lasting longer than three hours with an abrasion and swelling was sufficient evidence of substantial pain and considerable suffering. State v. Saunders, 132 Wn. App. 592, 600, 132 P.3d 743 (2006). Here, the victim's pain lasted for several days rather than a few hours.

We hold that the State presented sufficient evidence to sustain Bellon's conviction for assault of a child in the third degree.

II. Validity of the Diversion Contract

Bellon argues that the diversion contract that he entered with the State is not valid. Specifically, he claims that he did not "knowingly, intelligently, and

7

voluntarily" waive his constitutional rights. He claims this is so for two reasons. First, because the contract did not inform him that he would face community custody if found guilty. Second, because the contract incorrectly stated a standard sentencing range higher than the range he would face if found guilty.

This is essentially the same argument the appellant made in State v. Drum, 168 Wn.2d 23, 225 P.3d 237 (2010). Drum claimed a due process violation when he waived his rights to a speedy public trial, trial by jury, the right to hear and question witnesses, call witnesses, and testify in his own defense as part of a diversionary agreement. Id. at 28, 30. And, claimed because he did not know the standard range and the term of community custody, he did not knowingly, intelligently, and voluntarily waive his constitutional rights. State v. Drum, 143 Wn. App. 608, 617, 181 P.3d 18 (2008), aff'd, 168 Wn.2d 23, 225 P.3d 237 (2010).

Like the contract in Drum, Bellon's diversionary contract stipulated the evidence that would be used to determine his guilt if he failed to complete the requirements of the diversionary program. It also stipulated that this evidence was sufficient to establish his guilt for the underlying offenses. In it, Bellon indicated that he was aware that he was giving up several of his constitutional rights:

> I understand that, by this process, I am giving up the following constitutional rights: the right to a jury trial; the right to a speedy and public trial by an impartial jury in the county where the crime(s) is/are alleged to have been committed; the right to hear and question witnesses who testify against me; the right to call witnesses in my own behalf and at no expense to me; the right to testify or not to testify; the right to appeal a determination of guilty after trial; and the presumption of my innocence until the charge(s) has/have been proven beyond a reasonable doubt or I enter a plea(s) of guilty.

8

These rights include all those waived in the diversionary contract in Drum, with the addition of waiver of the right to an appeal and the right to the presumption of innocence. Drum, 168 Wn. 2d at 28. But, Bellon has not actually been deprived of these rights because the trial court made an independent determination of guilt beyond a reasonable doubt, and because we are presently hearing his appeal.

Like Drum, Bellon contends that he was unaware of the term of community custody, and misinformed of the standard sentencing range.[1]

The Drum court rejected the due process argument, finding that once the trial court made an independent determination of guilt, Drum's due process claim "evaporate[d]." Drum, 168 Wn.2d at 39. The trial court made such an independent determination here. The court specifically noted that a stipulated facts bench trial where the trial court independently reviews the evidence and makes its own findings is not the equivalent of a guilty plea. Id. (citing State v. Mierz, 127 Wn.2d 460, 468-69, 901 P.2d 286 (1995)).

Bellon argues that we should not follow Drum because his diversionary contract, unlike the contract in Drum, is nonstatutory. He articulates no reason why this changes the due process analysis.

We find no due process violation in Bellon's diversionary contract.

---

[1] The defendant in Drum asserted he was completely unaware of the standard sentence and term of community custody. Drum, 143 Wn. App. at 617. Bellon contends that he was unaware of the term of community custody, but misinformed of the standard sentencing range. Bellon's contract indicated the standard sentencing range was 36 to 48 months on count 1, and 3 to 8 months on count 2. This range was lowered to 31 to 41 months for count 1 and 1 to 3 months for count 2 after Bellon successfully argued at sentencing that the two offenses were in fact the same criminal conduct. This minor difference does not affect our due process analysis.

III. Exceptional Sentence

Bellon argues next that the trial court failed to exercise its discretion to consider his request for an exceptional sentence below the standard sentencing range. The trial court instead imposed a sentence within the standard sentencing range.

A sentence within the standard sentence range is not appealable unless the trial court refuses to exercise discretion or relies on an impermissible basis for refusing to impose the exceptional sentence. State v. Mail, 121 Wn.2d 707, 710, 854 P.2d 1042 (1993); State v. Khanteechit, 101 Wn. App. 137, 138, 5 P.3d 727 (2000). Where a trial court has considered the facts and concluded there is no basis for an exceptional sentence, the court has exercised discretion. State v. Garcia-Martinez, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

Here, the trial court considered the facts of Bellon's request, but concluded there was no basis for an exceptional sentence. Specifically, the court considered Bellon's proffered reasons for an exceptional sentence and found they did not fall within any of the 11 enumerated factors courts are to consider under RCW 9.94A.535. It nevertheless considered whether Bellon's reasons could be considered under a catchall provision. After a lengthy discussion, the court found that Bellon's proffered reasons could not be considered because they did not relate to the crime or his previous record. The court also noted that our Supreme Court has specifically rejected the use of the defendant's good conduct since the commission of the crime as a basis for an exceptional sentence. Clearly, the court

10

exercised its discretion to consider an exceptional sentence. And, its conclusion was within its sound discretion.

Because the trial court exercised its discretion in reviewing Bellon's request for an exceptional sentence, he is precluded from appealing his standard range sentence.

IV. Legal Financial Obligations

Last, Bellon argues that we should strike his criminal filing fee and the immediate accrual of interest on his nonrestitution LFOs. RCW 36.18.020(2)(h) prohibits the imposition of a criminal filing fee on indigent defendants. RCW 10.82.090(1) prohibits interest on nonrestitution LFOs. In State v. Ramirez, 191 Wn.2d 732, 747-50, 426 P.3d 714 (2018), our Supreme Court ruled these statutes apply prospectively to all cases pending on direct appeal. Bellon is indigent, and his case is now before us on appeal. He is therefore entitled to relief from his criminal filing fee and interest accrual on his nonrestitution LFOs.

We affirm Bellon's judgment and sentence, but remand to the trial court to strike his criminal filing fee and interest accrual on his nonrestitution LFOs.

_____
Appelwick C.J.

WE CONCUR:

_____          _____