[No. 81498-8.   En Banc.]
Argued June 25, 2009.    Decided January 21, 2010.

THE STATE OF WASHINGTON, *Respondent*, v. PATRICK BOYD DRUM, *Petitioner*.

*In the Matter of the Personal Restraint of* PATRICK BOYD DRUM, *Petitioner*.

24

*Manek R. Mistry* and *Jodi R. Backlund* (of *Backlund & Mistry*), for petitioner.

*Juelie B. Dalzell, Prosecuting Attorney*, and *Thomas A. Brotherton, Deputy*, for respondent.

¶1 STEPHENS, J. — This case requires us to determine the effect of a stipulation to the sufficiency of the evidence in a drug court contract, as well as whether the inference of criminal intent allowed under RCW 9A.52.040 constitutes an impermissible mandatory presumption. Patrick Drum entered into a contract to participate in drug court, which provided for the eventual dismissal of a residential burglary charge if Drum successfully completed a substance abuse treatment program. The contract required Drum to stipulate that the facts set forth in the investigation reports, witness statements, and laboratory tests were true and sufficient to support a finding of guilt. After waiting in custody for 42 days for a bed to open up at a treatment facility, Drum requested to leave the drug court program. His case was then set for a bench trial, at which the trial court found Drum guilty of residential burglary. The Court of Appeals affirmed Drum's conviction, holding that he waived any right to raise evidentiary issues on appeal and the drug court contract did not violate due process. We affirm Drum's conviction, though on different grounds.

## FACTS AND PROCEDURAL HISTORY

¶2 On September 28, 2004, Drum was arrested for residential burglary in Port Townsend. The victim discovered Drum in her kitchen, ran out of her house, and called police. A short while later, a neighbor saw Drum leave the victim's residence and walk into the next yard, where the police arrested him. The State charged Drum with residential burglary, an element of which is the "intent to commit a crime against a person or property" in the residence. Clerk's Papers at 1.

¶3 At his preliminary appearance, Drum told the court he had been "highly intoxicated" and had not intended to commit a crime in the residence. Verbatim Report of Proceedings (VRP) at 5. He later claimed he had wanted to use the phone. Drum moved for a reduction in the charge on the ground that he did not intend to commit a crime in the house. The judge denied the motion, noting that intent to commit a crime could be inferred from the unlawful entry.

¶4 On October 15, 2004, Drum petitioned for entry into a drug court program so that he could receive treatment for "a significant substance abuse problem." VRP at 20-21. The State conceded that Drum's offense was likely substance abuse related.

¶5 On October 29, 2004, Judge Craddock Verser held a hearing to approve Drum's petition for entry into drug court. At the hearing, Drum presented a signed drug court contract (Contract). The Contract contained the following relevant language:

Defendant agrees:

. . . .

16. That it is the Judge's decision to determine when the defendant has earned the ability to graduate from the Program and to determine when termination from the Program will occur.

17. That if the defendant chooses to leave the Program within the first two weeks after signing the Drug Court

28

Contract, withdrawal will be allowed, this contract will be declared null and void, and the defendant will assume prosecution under the pending charge(s) as if this contract had never been agreed to. The defendant agrees that this ability to withdraw from the terms of this contract will cease after the period of two weeks following the effective date of this contract and thereafter the defendant shall remain in the Program until graduation unless his/her participation is terminated by the Court. The defendant further agrees that the ability to withdraw from the terms of this contract will cease within the first two weeks, if he/she has committed a willful violation of this contract for which, in the judgment of the Court, he/she may be terminated from the program.

. . . .

19. If the defendant is terminated from the Program, the defendant agrees and stipulates that the Court will determine the issue of guilt on the pending charge(s) solely upon the enforcement/investigative agency reports or declarations, witness statements, field test results, lab test results, or other expert testing or examinations such as fingerprint or handwriting comparisons, which constitutes the basis for the prosecution of the pending charge(s). *The defendant further agrees and stipulates that the facts presented by such reports, declarations, statements and/or expert examinations are sufficient for the Court to find the defendant guilty of the pending charge(s).*

. . . .

Defendant acknowledges an understanding of, and agrees to waive the following rights:

1. The right to a speedy trial;

2. The right to a public trial by an impartial jury in the county where the crime is alleged to have been committed;

3. The right to hear and question any witness testifying against the defendant;

4. The right at trial to have witnesses testify for the defense, and for such witnesses to be made to appear at no expense to the defendant; and

5. The right to testify at trial.

My attorney has explained to me, and we have fully discussed all of the above paragraphs. I understand them all and

wish to enter into this Drug Court Contract. I have no further questions to ask the Judge.

Suppl. Clerk's Papers at 19, 21-24 (emphasis added). Prior to accepting the Contract, Judge Verser engaged in the following colloquy with Drum:

THE COURT: . . . I've got here a Drug Court Contract, Mr. Drum. Did you review that thoroughly with [your attorney]?

MR. DRUM: Yes, I did.

THE COURT: Do you understand what you're getting into?

MR. DRUM: Yes, I do.

THE COURT: This is not an easy way to get out of a felony conviction. It requires a lot of effort on your part, and you'll be under the scrutiny of the court for the next at least two years, do you understand that?

MR. DRUM: Yes, I do.

THE COURT: And that jail time will be imposed if you violate the conditions of your agreement with the court, and sometimes you end up getting more jail time in Drug Court than you would by pleading guilty, just because you can't stay straight, you know that?

MR. DRUM: Yes, I do.

VRP at 31-32. Drum was remanded into custody until a bed became available at a treatment facility.

¶6 Forty-two days later, on December 10, 2004, Drum was still in custody awaiting a treatment placement and asked to be released from the Contract. The court granted the request and set the case for a jury trial. Because Drum's request occurred more than two weeks after the effective date of the Contract, the State moved for a bench trial based on the contract provision waiving the right to a jury trial. The court granted the motion and scheduled a bench trial.[1]

¶7 Trial was held on January 21, 2005. Over the objection of the State, Judge Verser asked for argument and also

---

[1] No argument has been made that the Contract was breached by the State for failure to get Drum into a treatment facility or that the Contract did not take effect until Drum entered treatment.

allowed Drum to address the court. Drum's counsel argued that Drum's intoxication negated the intent element of residential burglary and that, at most, Drum was guilty of first degree criminal trespass. In support of his attorney's contention that he lacked the necessary criminal intent, Drum told the trial court that when he broke into the residence, he was intoxicated and simply wanted to use the phone.

¶8  Judge Verser found that there was not enough evidence in the police report to establish the fact of Drum's intoxication. Additionally, he considered Drum's statement about his lack of criminal intent but ultimately found that the police report and the inference of criminal intent arising from Drum's entry into the house established Drum's guilt beyond a reasonable doubt. The court found Drum guilty of residential burglary and imposed a midrange sentence of 13 months. On February 4, 2005, the court filed findings of fact and conclusions of law, which stated that Drum entered the victim's residence without permission with the intent to commit a crime therein.

¶9  No direct appeal was filed. On January 3, 2006, Drum timely filed a personal restraint petition alleging in part that his right to appeal was denied because of ineffective assistance of counsel. The State conceded this point. As a result, the Court of Appeals ordered that Drum's personal restraint petition be treated as a constructive late notice of appeal and a motion to file the late notice of appeal, which was granted. The direct appeal and personal restraint petition were consolidated, and direct review was accelerated. The court also appointed counsel for Drum.

¶10  On appeal, Drum argued that (1) the evidence was insufficient to convict him of residential burglary because the State had no evidence of his criminal intent; (2) the trial court violated due process by impermissibly inferring his criminal intent and shifting the burden of proof; and (3) the Contract was tantamount to a guilty plea, requiring the same due process protections as apply in that context.

¶11 The Court of Appeals affirmed Drum's conviction and denied his personal restraint petition. *State v. Drum*, 143 Wn. App. 608, 610, 181 P.3d 18 (2008). The court held that Drum waived any right to challenge the sufficiency of the evidence when he signed the Contract, and it therefore refused to address his claim on the merits. *Id.* at 614-17. Additionally, the court held that the Contract was not the equivalent of a guilty plea but rather was like a deferred prosecution in that it left the adjudication of guilt for a later date. *Id.* at 619-20. We granted Drum's petition for review. *State v. Drum*, 164 Wn.2d 1025, 195 P.3d 958 (2008).

## ANALYSIS

¶12 Drum argues that the Court of Appeals erred in refusing to consider his challenge to the sufficiency of the evidence. Because, as Drum contends, a stipulation to the sufficiency of the evidence is a legal conclusion, a court is not bound by it. Alternatively, Drum argues that if the Contract is binding, it is equivalent to a guilty plea, and the State must prove he made a voluntary and intelligent waiver of his rights with full knowledge of all direct consequences.

¶13 The State responds by noting that even if the Court of Appeals erred in holding it was bound by Drum's stipulation to the sufficiency of the evidence, the trial court did not rely on the stipulation but instead made an independent determination of guilt after considering all the evidence. Additionally, the State argues that the Contract is not equivalent to a guilty plea because stipulations require a determination of guilt at trial.

■■ ¶14 We review issues of law de novo. *State v. Womac*, 160 Wn.2d 643, 649, 160 P.3d 40 (2007). We also review de novo Drum's claim that his constitutional rights were denied. *See Brown v. State*, 155 Wn.2d 254, 261, 119 P.3d 341 (2005).

¶15 Drug courts are programs that divert nonviolent, drug-related offenders into intensive treatment programs

with the goal of encouraging offenders "into a productive, drug-free lifestyle." FINAL B. REP. on Engrossed Second Substitute H.B. 1006, at 3, 56th Leg., Reg. Sess. (Wash. 1999). In general, offenders participate in required drug treatment and counseling, find work, meet with corrections officers, attend regular visits with a judge, and meet any other conditions set by the court. *Id.* Personal involvement by the drug court judge, prosecutor, defense attorney, and treatment providers is cited as the key to the success of drug courts. Pamela L. Simmons, Comment, *Solving the Nation's Drug Problem: Drug Courts Signal a Move Toward Therapeutic Jurisprudence*, 35 GONZ. L. REV. 237, 238 (1999/00).

¶16 The Washington Legislature first authorized statewide drug courts in 1999, leaving it to the individual counties to "establish and operate drug courts." Former RCW 2.28.170(1) (1999). A "drug court" is defined as

a court that has special calendars or dockets designed to achieve a reduction in recidivism and substance abuse among nonviolent, substance abusing felony and nonfelony offenders, whether adult or juvenile, by increasing their likelihood for successful rehabilitation through early, continuous, and intense judicially supervised treatment; mandatory periodic drug testing; and the use of appropriate sanctions and other rehabilitation services.

RCW 2.28.170(2). While the specific operation of the drug court is left to each county, the minimum requirements for participation by offenders are that (1) "[t]he offender would benefit from substance abuse treatment"; (2) "[t]he offender has not previously been convicted of a serious violent offense or sex offense"; and (3) the offender is not currently charged with or convicted of a sex offense, a serious violent offense, an offense during which a firearm was used, or an offense during which the defendant caused substantial bodily harm or death. RCW 2.28.170(3)(b)(i)-(iii). The legislature did not set any other conditions for participation in drug court, though it did authorize counties to establish more stringent requirements. RCW 2.28.170(3)(b).

¶17 With this background in mind, we turn to the specific issues raised by Drum in this appeal.

1. *Does a Criminal Defendant's Stipulation to the Sufficiency of the Evidence in a Drug Court Contract Bind a Court?*

■ ¶18 Drum is correct that courts are not bound by stipulations to legal conclusions, and the State appears to concede this point. *See* Resp't's Suppl. Br. at 4-5. We have previously noted that "[a] stipulation as to an issue of law is not binding on this court; it is the province of this court to decide the issues of law." *State v. Vangerpen,* 125 Wn.2d 782, 792, 888 P.2d 1177 (1995); *Rusan's, Inc. v. State,* 78 Wn.2d 601, 606, 478 P.2d 724 (1970) ("Courts of law are not bound by parties' stipulations of law."); *see also In re Pers. Restraint of Cadwallader,* 155 Wn.2d 867, 875, 123 P.3d 456 (2005) (holding that the defendant could not stipulate to a persistent offender life sentence, which is a legal conclusion, if no facts established the appropriateness of that sentence); *Barnett v. Hicks,* 119 Wn.2d 151, 161, 829 P.2d 1087 (1992) (holding that parties cannot stipulate to jurisdiction or limit a court's review).

■ ¶19 Drum is also correct in noting that whether the evidence is sufficient to support a conviction is an issue of law. *State v. Knapstad,* 107 Wn.2d 346, 351-52, 729 P.2d 48 (1986); *see also State v. Sullivan,* 143 Wn.2d 162, 171 n.32, 19 P.3d 1012 (2001). The Court of Appeals apparently failed to recognize the legal nature of Drum's sufficiency of the evidence claim. While refusing to review the merits of that claim in light of Drum's stipulation, the court also held that the Contract was not the equivalent of a guilty plea because the trial court independently determined Drum's guilt. *Drum,* 143 Wn. App. at 617, 619 n.1. This put Drum in a catch-22 situation. He received no appellate review of the merits of his sufficiency of the evidence claim because his stipulation was held binding, but the Court of Appeals held his stipulation was not the equivalent of a guilty plea because the trial court was not bound by the stipulation and independently determined his guilt.

¶20 We are troubled by the Court of Appeals' suggestion that a drug court contract clause stipulating to the sufficiency of the evidence results in the defendant waiving his right to a determination of guilt beyond a reasonable doubt. Such a clause would have no place in a drug court contract, and the Court of Appeals erred in reading the clause in Drum's Contract so broadly. Instead, the trial court correctly interpreted the Contract to provide that the defendant stipulates to a set of facts and, based on these facts, there is sufficient evidence to establish guilt. By entering a drug court contract, a defendant is not giving up his right to an independent finding of guilt beyond a reasonable doubt. A trial court still has the authority to find the defendant not guilty if it determines that the stipulated evidence does not establish all elements of the crime beyond a reasonable doubt.

¶21 Accordingly, we hold that Drum's stipulation to the sufficiency of the evidence was not binding on either the trial court or the Court of Appeals. The Court of Appeals erred when it refused to address Drum's sufficiency of the evidence claim on its merits. While Drum requests a remand to the Court of Appeals with instructions to address his sufficiency of the evidence claim, we believe this is not an efficient use of judicial resources. Because the sufficiency of the evidence presents a legal question, we are in as good a position as the Court of Appeals to address the merits of Drum's claim. *See* RAP 12.2 ("The appellate court may reverse, affirm, or modify the decision being reviewed and take any other action as the merits of the case and the interest of justice may require.").

2. *Is There Sufficient Evidence To Sustain Drum's Conviction?*

¶22 In asking whether evidence is sufficient to sustain a conviction, we review the evidence in the light most favorable to the State. *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003). The relevant question is "whether any rational fact finder could have found the essential

elements of the crime beyond a reasonable doubt." *Id.* (citing *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Further, we defer to the fact finder on issues of witness credibility. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

¶23 Drum argues that there was insufficient evidence of his criminal intent to convict him of residential burglary. He contends that the trial court relied on the statutory inference of criminal intent under RCW 9A.52.040 as the sole proof of his intent, which impermissibly shifted the burden of persuasion and operated as a conclusive presumption of guilt in violation of his due process rights.

¶24 RCW 9A.52.040 allows an inference of criminal intent for burglary in certain circumstances. It provides:

> In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.

¶25 This provision is similar to the pattern jury instruction we considered in *State v. Brunson*, 128 Wn.2d 98, 101, 905 P.2d 346 (1995) (quoting Clerk's Papers at 33), which stated:

> "A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given."

We held in *Brunson* that this instruction created a permissive inference, not a mandatory presumption, because the language in the instruction is discretionary and allows the trier of fact to reject the inference as it sees fit. *Id.* at 106-07. We further recognized that when a permissive

inference is the " 'sole and sufficient' proof of an element," the presumed fact must flow beyond a reasonable doubt from the proven fact, so that the prosecution does not "circumvent its burden of persuasion." *Id.* at 107 (citing *County Court v. Allen*, 442 U.S. 140, 167, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979)). On the other hand, where the inference is only part of the state's proof, the presumed fact must flow more likely than not from a proven fact. *Id.* (quoting *State v. Hanna*, 123 Wn.2d 704, 710, 871 P.2d 135 (1994)).

¶26 The result in *Brunson* was that there was sufficient evidence to sustain the defendants' convictions. *Id.* at 111. For one defendant, the evidence against him was his attempted entry through a kitchen window, his "implausible" excuse that he simply wanted to use the phone, and the fact that kitchenware from the house was found in the yard outside. *Id.* at 109. We held that the permissive inference allowed by the jury instruction was not the sole and sufficient proof of criminal intent and that the circumstantial evidence was enough for the jury to find the defendant intended to commit a crime, regardless of the inference. *Id.* at 109, 111.

¶27 The following year in *State v. Deal*, 128 Wn.2d 693, 697, 911 P.2d 996 (1996), we examined a permissive inference jury instruction with language different from the instruction in *Brunson*. The instruction stated:

"A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein *unless such entering or remaining shall be explained by evidence satisfactory to the jury to have been made without such criminal intent.* This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given."

*Id.* (quoting Jury Instruction 9). We observed that while permissive inferences generally do not run afoul of the constitution, mandatory presumptions violate due process when they relieve the State of its obligation to prove all

elements of a crime beyond a reasonable doubt. *Id.* at 699. We held that a jury instruction that included the "unless" clause created a mandatory presumption because it required "the defendant to prove by some quantum of evidence that the inference should not be drawn." *Id.* at 701. This improperly shifted the burden of proof to the defendant because a reasonable juror could be forced to conclude that the intent element existed unless the defendant presented satisfactory evidence explaining his presence at the premises in question. *Id.* The effect of this instruction, then, was to relieve the State of its burden of proving criminal intent beyond a reasonable doubt. *Id.*

¶28  Similarly, in *State v. Cantu*, 156 Wn.2d 819, 826-27, 132 P.3d 725 (2006), we reaffirmed our holding in *Deal* that an inference becomes an impermissible mandatory presumption when it requires the defendant to submit evidence to rebut the inference of his criminal intent. We concluded that the State violated Cantu's due process rights when the prosecutor and judge emphasized on multiple occasions that Cantu failed to provide evidence to rebut the inference of his criminal intent. *Id.* at 827-28.

¶29  Though RCW 9A.52.040 contains the objectionable "unless" clause, the trial court's use of the statutory inference in this case is similar to the use of the inference in *Brunson* because there was no mandatory presumption or impermissible burden shifting. Unlike in *Deal* and *Cantu*, Drum was not required to present satisfactory evidence explaining his presence in the victim's house. Rather, as invoked by the trial court, the statutory inference operated permissively. It is true that the trial court relied on the Court of Appeals' opinion in *State v. Cantu,* 123 Wn. App. 404, 98 P.3d 106 (2004), which we then reversed in *Cantu,* 156 Wn.2d at 829. The record confirms, however, that the trial court did not invoke *Cantu* as creating a mandatory presumption, but rather relied on RCW 9A.52.040, consistent with our holding in *Brunson. See Brunson*, 128 Wn.2d at 112.

¶30 First, the trial court considered the police reports and witness statements, both of which were stipulated to by Drum. Additionally, the trial court took into consideration (but apparently disbelieved) Drum's statement that he did not have the requisite criminal intent when he broke into the residence because he was intoxicated and simply wanted to use the phone.[2] The trial court specifically found that the police report did not adequately establish Drum's intoxication. VRP at 69. And, the court implicitly found the victim's statements to the police more credible than Drum's statement that he was intoxicated and wanted to use the phone. VRP at 69-70. Relying on the evidence and the statutes, the trial court found Drum guilty beyond a reasonable doubt. VRP at 70.

¶31 To put this matter into perspective, a reasonable finder of fact would certainly be permitted to draw an inference of Drum's intent to commit a crime in the residence from the circumstances involved and the witnesses' statements, with or without the reference to RCW 9A.52-.040. *See Brunson*, 128 Wn.2d at 109. Thus, the permissive inference allowed under the statute reinforced, but did not alter, the fact-finding process. We reject Drum's claim that the statutory inference operated as a mandatory presumption of his criminal intent. Because this claim is the linchpin of Drum's challenge to the sufficiency of the evidence to convict him, that challenge fails.[3]

---

[2] The implicit premise of Drum's argument is that there needs to be direct, subjective evidence of his criminal intent before he can be convicted of residential burglary. This contention is misplaced, as Washington courts have never held that subjective evidence of intent is required. *Compare Escamilla v. Tri-City Metro Drug Task Force*, 100 Wn. App. 742, 753-54, 999 P.2d 625 (2000) (looking to circumstantial evidence, not subjective denial of knowledge of illegal activity, as controlling), *with In re Forfeiture of One 1970 Chevrolet Chevelle*, 166 Wn.2d 834, 844, 215 P.3d 166 (2009) (holding that insufficient circumstantial evidence of knowledge existed).

[3] To the extent Drum argues that the stipulated facts are otherwise insufficient to support his conviction, his claim cannot succeed. We have an incomplete record of the stipulated facts before the trial court. In particular, the record does not include the police report or witness statements that the trial court referenced in making its finding of guilt. As the party seeking review, it was Drum's responsibility to designate the necessary portions of the record. *See* RAP 9.6(a). In the

3. *Was Drum's Drug Court Contract Tantamount to a Guilty Plea?*

¶32 Drum's final argument is that, to the extent the Contract was binding on the trial court and Court of Appeals, it is the equivalent of a guilty plea and required the State to provide the same due process protections as apply in that context. Drum makes this argument in the alternative. Because we agree with Drum that the Contract stipulation was not binding and because the trial court made an independent determination of guilt, Drum's due process argument evaporates. We have previously held that a stipulated facts trial, where the trial court independently reviews the evidence and makes its own findings, is not the equivalent of a guilty plea. *State v. Mierz*, 127 Wn.2d 460, 468-69, 901 P.2d 286 (1995) (citing *State v. Johnson*, 104 Wn.2d 338, 705 P.2d 773 (1985)).

## CONCLUSION

¶33 While Drum is correct that courts are not bound by stipulations to the legal sufficiency of the evidence, the trial court in this case independently considered the evidence to which Drum stipulated and found him guilty of residential burglary. The trial court did not use the statutory inference of criminal intent in RCW 9A.52.040 as a mandatory presumption. And, the evidence was otherwise sufficient to sustain a finding of guilt beyond a reasonable doubt. We affirm Drum's conviction.

C. Johnson, Owens, Fairhurst, and J.M. Johnson, JJ., concur.

¶34 Madsen, C.J. (dissenting) — I agree with the majority that the court here was not bound by Patrick Drum's

absence of an adequate record, we decline to review Drum's sufficiency of the evidence claim on this basis.

stipulation to the legal sufficiency of the evidence and that the trial court was required to independently consider the stipulated evidence. I disagree, however, with the majority when it holds that the judge did not use the statutory inference of criminal intent in RCW 9A.52.040 as a mandatory presumption. Therefore, I dissent.

Discussion

¶35 In *State v. Deal*, 128 Wn.2d 693, 700, 911 P.2d 996 (1996), this court held that the language " 'unless such entering or remaining shall be explained by evidence satisfactory to the jury to have been made without such criminal intent' " renders an instruction erroneous because the "unless" clause creates a mandatory presumption. We reasoned that the clause requires "the defendant to prove by some quantum of evidence that the inference should not be drawn." *Id.* at 701. Later, we reaffirmed our holding in *Deal* in *State v. Cantu*, 156 Wn.2d 819, 132 P.3d 725 (2006). In *Cantu* the prosecutor acknowledged that the court was not required to infer intent but then argued that, absent an explanation from the defendant for being in his mother's locked bedroom, the court should employ the inference to find the defendant entered or remained unlawfully with the intent to commit a crime. In that case, as here, the defendant entered unlawfully but committed no crime while inside the home. We reversed the conviction in *Cantu*.

¶36 Here the trial judge specifically indicated that he was relying on the Court of Appeals decision in *Cantu*. Additionally, the trial judge in this case stated, "I believe that case [*Cantu*] justifies which, you know, what's he doing in somebody else's house anyway . . . unless he's got the intent to commit a crime." Verbatim Report of Proceedings at 69. As in *Cantu*, I believe the judge here required the defendant "to prove, with sufficient evidence, that his intent was innocent." *Cantu*, 156 Wn.2d at 828.

¶37 As in *Cantu*, I would reverse the conviction and remand for further proceedings.

ALEXANDER, SANDERS, and CHAMBERS, JJ., concur with MADSEN, C.J.