IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68024-2-I |
| Respondent, | ) | DIVISION ONE |
| v. | ) | |
| BRIAN CHADWICK DUBLIN, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: June 10, 2013 |

BECKER, J. —Brian Dublin appeals his convictions for first degree burglary and attempted first degree rape of GG, an adolescent girl. Finding the evidence on these counts sufficient, and finding no fault with the trial court's decision not to sever them from similar counts involving two other young women, we affirm.

According to testimony presented at trial, at about 3:00 a.m. on October 18, 2003, 18-year-old AB was awakened from sleep in her family home on Vashon Island to find a male intruder in her bedroom. The intruder was holding a knife. He raped AB, threatened her not to tell anyone, and then departed. AB woke her stepfather and disclosed the rape. She was taken to the hospital. Rape test samples revealed DNA (deoxyribonucleic acid) from an unidentified male. The case went cold.

At about 3:15 a.m. on July 2, 2006, 12-year-old GG was awakened from sleep in her family home on Vashon Island to find a male intruder in her

bedroom. The bedroom had previously belonged to GG's older sister. The intruder told GG he had already stabbed her sister, grabbed her genital area, and told her to take off her clothing and bend over. GG escaped and ran to her parents' bedroom. The intruder fled. Her parents called 911. No suspect was identified. The case went cold.

At about 2:00 a.m. on January 10, 2010, 16-year-old EP was awakened from sleep in her family home on Vashon Island to find a male intruder lying on top of her in her bed. He threatened to kill her, raped her, and then fled. EP went to her parents' bedroom and reported the attack. EP was taken to the hospital. Rape test samples revealed male DNA matching the profile of AB's attacker in 2003.

EP named appellant Brian Dublin as a possible suspect. EP was acquainted with Dublin, then in his late twenties. She had seen Dublin, wearing a beard and a dark pullover, at a party where she had been drinking on the night of her attack. During the encounter, EP felt her attacker's beard and saw that he wore dark clothing. Surveillance footage from a bar that night showed a bearded Dublin in a dark sweatshirt buying drinks. Dublin had closed his tab at the bar shortly before EP was raped.

King County Sheriff's detectives obtained a sample of Dublin's DNA. It matched the samples taken from both AB and EP. Detectives then searched Dublin's home. A small notebook was discovered inside a shoe box in a storage loft near Dublin's bed. The notebook contained a list of names. AB's full name

was at the top of the list. The initials "GG" were midway down the list. EP's full name was listed last.

In December 2010, Dublin was presented at a lineup that GG attended. This was more than four years after her attack. GG identified Dublin as one of two suspects but was unable to definitively identify him.

Dublin was charged with three counts of first degree burglary, two counts of first degree rape as to AB and EP, and one count of attempted first degree rape as to GG. He was also charged with attempted indecent liberties as to a fourth young woman, CB, who alleged that Dublin attempted to take her clothes off while she was drunk at a party. The burglary charges each included an allegation that the offense was committed for purposes of sexual gratification.

Before trial, Dublin moved to sever the two counts involving GG. The court denied the motion.

A trial lasting 14 days was held in September 2011. Dublin testified the sexual encounters with AB and EP were consensual liaisons that had taken place in his truck. He admitted knowing GG's older sister, but he denied any encounter with GG. He denied owning the notebook or authoring the list of names.

The jury convicted Dublin as charged except as to the count involving CB. A mistrial was declared as to that count.

Dublin appeals his convictions on the two counts concerning GG.

3

## SUFFICIENCY OF THE EVIDENCE

Dublin contends the State's evidence was inadequate to prove that he was the perpetrator of the burglary and attempted rape of GG.

In asking whether evidence is sufficient to sustain a conviction, we review the evidence in the light most favorable to the State. State v. Drum, 168 Wn.2d 23, 34, 225 P.3d 237 (2010). The relevant question is whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. Drum, 168 Wn.2d at 34-35. In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. Drum, 168 Wn.2d at 35. Direct evidence and circumstantial evidence are considered equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Applying these standards, we conclude the State's evidence linking Dublin to the crimes against GG was sufficient. The foot tracks detectives found outside GG's house matched Dublin's shoe size. GG reported to detectives that her attacker smelled of cigarette smoke, and Dublin was a smoker. The attacker's remarks to GG demonstrated that he knew GG had a sister, and Dublin's social acquaintance with GG's older sister was established at trial. Dublin was familiar with the location of GG's home, having picked up the sister to attend parties in years before. The list of names in the small notebook found in Dublin's home included GG's initials.

Dublin was one of two individuals GG picked out of a lineup four years after the attack. His dark hair and pale complexion were consistent with the description GG gave of the man whose face she briefly saw in the dark room during the attack. A detective watching Dublin during the lineup observed him "blink and swallow hard" when he heard the lines he would have to repeat out loud: "Shut up or I'm going to fucking kill you," and "Your sister is all stabbed up." GG testified that hearing Dublin repeat the statements "brought back a lot" and triggered a fear response that was greater than when the other suspects in the lineup said the same words.

Dublin does not assign error to the court's pretrial ruling under Evidence Rule 404(b) that the jury could properly consider the three attacks as probative of a common identity because of the similarities between them. All three attacks were home invasions. All three victims were asleep in their beds between approximately 2:00 and 3:15 a.m. All three lived in isolated, wooded areas on Vashon Island in homes that were customarily left unlocked at night. All three were included on the list of names found in Dublin's house. The order their names appeared on the list was consistent with the chronological order in which their attacks occurred. Similar to AB's assailant who brandished a knife, GG's assailant implied possession of a knife by saying he had "stabbed up" her sister. AB and GG were both told to "shut up." In the incidents involving AB and GG, the assailant threatened the victim by saying he had already harmed members of the victim's family; he instructed them to take their shirts and pants off before the

5

rape was to begin; and he spoke in a deep, rough whisper, described by AB as "raspy" and by GG as "husky." These numerous similarities provide further evidence identifying Dublin as the intruder who attempted to rape GG.

Dublin submits it is significant that in GG's case there was no penetration and no DNA evidence directly linking Dublin to the attack. This disparity is not significant. GG's attacker told her to take her clothes off and "bend over." The jury could reasonably infer that the only reason there was no penetration or DNA evidence in GG's case was because she managed to escape. The minor differences in how the three victims described their attacks do not undermine the substantial evidence identifying Dublin as the perpetrator of the burglary and rape of GG. We conclude the evidence was sufficient.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Before trial, Dublin moved to sever the charges involving GG. The court denied the motion. Dublin's counsel did not renew the motion "before or at the close of all the evidence," as permitted by Criminal Rule 4.4(a)(2). Failure to timely renew the motion waives the issue for purposes of appeal. CrR 4.4(a)(2); State v. Bryant, 89 Wn. App. 857, 864, 950 P.2d 1004 (1998), review denied, 137 Wn.2d 1017 (1999). Dublin contends this lapse deprived him of his constitutional right to effective assistance of counsel.

To establish ineffective assistance of counsel, a party must show both that counsel's performance was objectively deficient and that it resulted in prejudice.

6

Strickland v. Washington, 466 U.S. 668, 690-92, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); In re Det. of Coe, 175 Wn.2d 482, 490, 286 P.3d 29 (2012). The failure by Dublin's attorney to renew the motion to sever does not support an ineffective assistance claim because Dublin cannot show that the motion would properly have been granted had it been made. State v. Price, 127 Wn. App. 193, 203, 110 P.3d 1171 (2005), aff'd, 158 Wn.2d 630, 146 P.3d 1183 (2006).

Severance is discretionary. State v. Bythrow, 114 Wn.2d 713, 717, 790 P.2d 154 (1990). A motion to sever should be granted only if the defendant shows that a trial involving the combined counts would be so manifestly prejudicial as to outweigh the concern for judicial economy. Bythrow, 114 Wn.2d at 718. In determining whether the potential for prejudice requires severance, a trial court must consider (1) the strength of the State's evidence on each count, (2) the clarity of defenses as to each count, (3) court instructions to the jury to consider each count separately, and (4) the admissibility of evidence of the other charges even if not joined for trial. Russell, 125 Wn.2d at 62.

First, the State produced strong evidence independently linking Dublin to each attack. Russell, 125 Wn.2d at 62. Although there was no DNA evidence from the attack on GG, the circumstantial evidence was ample as discussed above.

Second, Dublin absolutely denied having a sexual encounter with GG, distinguishing his defense to the charges involving her from his defense, with regard to the two rape victims, that sex was consensual. Third, the court

7

properly instructed the jury to consider each count separately. Showing that they took this instruction seriously, the jury deadlocked on the count of attempted indecent liberties involving CB.

Fourth, the court ruled the evidence concerning GG, AB, and EP was cross admissible under Evidence Rule 404(b) because it went to the identity of the assailant. Therefore, even if the charges involving GG had been severed, the evidence concerning AB and EP could have been introduced at a separate trial of those charges.

In short, the potential for prejudice was not so great as to outweigh the concern for judicial economy. Because Dublin cannot show that the motion to sever would have been granted had it been renewed, there is no merit to his claim of ineffective assistance of counsel.

Affirmed.

Becker, J.

WE CONCUR:

Spearman, A.C.J.