# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49172-9-II |
| Respondent, | |
| v. | |
| CRAIG ARNOLD POPEJOY, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Craig Arnold Popejoy appeals his conviction of felony harassment. We conclude sufficient evidence supports his conviction. We affirm.

## FACTS

Late in the evening on January 11, 2016, Popejoy's truck ran out of fuel. Because his lights went completely black, he pushed the vehicle off the road. Popejoy walked to his house to get gas to refuel the vehicle.

Pierce County Sheriff's Department dispatch called Deputy Tyson Vea about a vehicle in a ditch, Popejoy's truck. Vea saw an unoccupied truck in the ditch near the fog line, almost on the road.

Vea ran the license plate on the truck to find the name of the registered owner. Vea learned that the truck was sold in June of the previous year. Vea called dispatch for assistance in locating the owner. Popejoy was not associated with the vehicle. Vea also saw that the truck had a damaged ignition. Vea had the car towed and impounded because it posed a safety hazard.

On January 12, at 2:00 A.M., Popejoy obtained gas and returned to the place where he left the truck. When he arrived and saw his vehicle missing, Popejoy called 911 to ask why his vehicle had been impounded. During the call, Popejoy told the dispatcher that he would sue Pierce County. Dispatch then called Vea explaining that Popejoy wanted contact involving the vehicle.

Vea phoned Popejoy. Popejoy told Vea that he wanted to speak to the officer who towed his truck. Vea identified himself as the officer. Then Popejoy "just went off and was angry." RP at 48. Vea described Popejoy as "very, very upset." Report of Proceedings (RP) at 49. Vea tried to explain why he towed the car. They discussed the confusion about who owned the truck. Vea explained that he found no information that Popejoy was the registered owner of the truck.

In response, Popejoy continued to yell at Vea and express his anger. He called Vea "a dumb motherf**ker, . . . a stupid cop." RP at 50. Vea tried to calm Popejoy down and apologized three or four times throughout the phone call. Popejoy responded with more anger. Popejoy "said that he was going to shoot [Vea] on sight if he ever saw [Vea] and that he was going to come back for his car and he was going to shoot [Vea]. And then he threatened to sue [Vea]." RP at 51.

Vea believed that because of Popejoy's extreme anger that Popejoy meant his threat. Vea did not know Popejoy and did not know what he looked like. Popejoy's threats scared Vea. Vea feared that because of Popejoy's negativity towards police officers in general, he also posed a risk to other officers' safety.

Popejoy admitted that when he spoke with Vea on the phone, he swore at him and said, "he was a bunch of pieces of sh*t for doing that to me." RP at 74. Popejoy recalled that he threatened to sue Vea and get him fired, but denied threatening to shoot him or harm him. Popejoy also denied threatening to kill any law enforcement personnel.

The State charged Popejoy with felony harassment of a criminal justice participant and bail jumping.[1] A jury found Popejoy guilty of felony harassment and bail jumping. Popejoy appeals, only raising issues related to the felony harassment.

ANALYSIS

Popejoy argues that the State violated his due process rights because insufficient evidence supports his conviction for felony harassment of an officer. He argues that Popejoy's threats were "mere hyperbole" and there existed no evidence he had the present or future ability to carry out the threat. Br. of Appellant at 8. Finally, Popejoy argues that Vea's fear was not reasonable because Popejoy had no ability to recognize, find, or encounter Vea. We disagree.

I.    STANDARD OF REVIEW

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Circumstantial evidence is equally as reliable as direct evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).

In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *Homan*, 181 Wn.2d at 106 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). In addition, we "must defer to the trier of fact for purposes

---

[1] RCW 9A.46.020(1)(a)(i), (2)(b)(iii); RCW 9A.76.170(1), (3)(c).

of resolving conflicting testimony and evaluating the persuasiveness of the evidence." *Homan*, 181 Wn.2d at 106.

II.    SUFFICIENT EVIDENCE SUPPORTS POPEJOY'S CONVICTION

To convict Popejoy of felony harassment, the State had to prove beyond a reasonable doubt that Popejoy knowingly threatened to cause bodily injury in the future to Vea, that the Popejoy's words placed Vea in reasonable fear that the threat would be carried out, that Popejoy acted without lawful authority, and that Vea was a criminal justice participant who was performing his official duties at the time the threat was made. RCW 9A.46.020.

"When the threat involves a criminal justice participant, 'the threat must be a fear that a reasonable criminal justice participant would have under all the circumstances.'" *State v. Boyle*, 183 Wn. App. 1, 7, 335 P.3d 954 (2014) (quoting RCW 9A.46.020(2)(b)). "'Threatening words do not constitute harassment if it is apparent to the criminal justice participant that the person does not have the present and future ability to carry out the threat.'" *Boyle*, 183 Wn. App. at 7 (quoting RCW 9A46.020(2)(b)).

A.    TRUE THREAT

First, Popejoy argues that the State failed to prove that he made a "true threat." Br. of Appellant at 8. He argues that the threats were "mere hyperbole." Br. of Appellant at 8.

"A statute that makes a threat a crime may proscribe only 'true threats.'" *Boyle*, 183 Wn. App. at 7. A "true threat" is defined as "'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of another person.'" *State v. Locke*, 175 Wn. App. 779, 789, 307 P.3d 771 (2013) (internal quotation marks omitted) (quoting *State v. Allen*, 176 Wn.2d 611, 626, 294 P.3d 679 (2013)). Here, the court instructed the jury that

4

a threat "means to communicate, directly or indirectly, the intent to cause bodily injury in the future to the person threatened or to any other person." CP at 27 (Instr. 27).

"This objective standard 'focuses on the speaker, who need not actually intend to carry out the threat: [i]t is enough that a reasonable speaker would foresee that the threat would be considered serious.'" *Boyle*, 183 Wn. App. at 8 (quoting *State v. Schaler*, 169 Wn.2d 274, 283, 236 P.3D 858 (2010)). "'A true threat is a serious threat, not one said in jest, idle talk, or political argument.'" *Boyle*, 183 Wn. App. at 8 (quoting *State v. Kilburn*, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004)). But, an indirect threat may still constitute a true threat. *Boyle,* 183 Wn. App. at 8. "The nature of the threat depends on a totality of the circumstances, and a reviewing court does not limit its inquiry to a literal translation of the words spoken." *Boyle*, 183 Wn. App. at 8.

Vea testified that Popejoy displayed great anger during their phone call, despite Vea's continued explanations and apologies. Popejoy continued to yell at Vea and express his anger. He called Vea "a dumb motherf**er, . . . a stupid cop." RP at 50. Popejoy "said that he was going to shoot [Vea] on sight if he ever saw [Vea] and that he was going to come back for his car and he was going to shoot [Vea]. And then he threatened to sue [Vea]." RP at 51.

This language constituted a "true threat" because a reasonable person would foresee that the statement would be interpreted as a serious expression of intention to inflict bodily harm. Popejoy, while in a state of incredible anger, stated he would shoot Vea on sight. Popejoy's statements cannot be described fairly as "mere hyperbole," especially when considered in the light most favorable to the State. Accordingly, the State presented sufficient evidence of a true threat.

B.     REASONABLE FEAR

Second, Popejoy argues that the State failed to prove that Vea reasonably feared that Popejoy would carry out any threat to shoot him or cause bodily harm.

Vea testified the he believed Popejoy legitimately threatened him. Popejoy would not calm down. He continually expressed anger. Popejoy's threats scared Vea. Vea feared that because Popejoy generally had a negative attitude towards police officers that other officers were also at risk. Even though Vea did not know Popejoy, that does not mean that Popejoy did not have a future ability to carry out his threat. When considering the evidence in the light most favorable to the State a jury could conclude that Vea's fear that Popejoy would carry out his threat was "'a fear that a reasonable criminal justice participant would have under all the circumstances.'" *Boyle*, 183 Wn. App. at 7 (quoting RCW 9A.46.020(2)(b)). The State presented sufficient evidence that Vea reasonably feared Vea would carry out his threat.

Popejoy analogizes his case to *State v. C.G.*, 150 Wn.2d 604, 80 P.3d 594 (2003), and argues that Vea did not reasonably fear bodily harm. Popejoy also distinguishes his case from *Boyle*.

In *C.G.*, the defendant's conviction for felony harassment was reversed because the victim testified she feared only bodily harm, not death. 150 Wn.2d at 610. The court held that the State needed to prove that the victim was "placed in reasonable fear that the threat made [was] the one that will be carried out." *C.G.*, 150 Wn.2d at 610. But the court noted that when the evidence

shows a defendant threatened to kill, the State might also charge the defendant "with threatening to inflict bodily injury, in the nature of a lesser included offense." *C.G.*, 150 Wn.2d at 611. Thus, a defendant may be convicted on the "misdemeanor charge even if the person threatened was not placed in reasonable fear that the threat to kill would be carried out, but was placed in fear of bodily injury." *C.G.*, 150 Wn.2d at 611.

Popejoy argues that like C.G., his anger and belligerence led Vea, like the victim in *C.G.*, to understand that Popejoy was just angry. However, in *C.G.* the State proved only a fear of bodily harm, not death. 150 Wn.2d at 610. Here, unlike in *C.G.*, the State did not have to prove a threat of death. It had to prove a threat of bodily injury in the future to Vea, a criminal justice participant who acted in his official capacity.

Popejoy also tries to distinguish *Boyle* from his case. He argues there is insufficient evidence that Vea reasonably feared his threats.

In *Boyle*, the issue was whether Boyle's threat was a "true threat," not whether the officer's fear was reasonable. 183 Wn. App. at 8-9. Regardless, the court found the officer had a reasonable fear of Boyle after he made a series of threatening statements to the officer, including that although he would not hurt the officer's family, someone else would kill the officer and his family. *Boyle*, 183 Wn. App. at 5. Here, the evidence presented showed that Popejoy said he would shoot Vea upon sight. Sufficient evidence exists for a juror to reasonably find Vea possessed "'a fear that a reasonable criminal justice participant would have under all the circumstances.'" *Boyle*, 183 Wn. App. at 7 (quoting RCW 9A.46.020(2)(b)).

7

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Bjorgen, C.J.

_____
Sutton, J.