IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2017 JUL 31 AM 9: 25

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76739-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| WALLACE WILLIAM VAUGHN C | ) | UNPUBLISHED OPINION |
| TOMLIN, JR., | ) | |
| | ) | |
| Appellant. | ) | FILED: July 31, 2017 |
| | ) | |

MANN, J. — Wallace Tomlin, Jr. appeals his conviction for third degree assault after he spit in the face of a nurse attempting to take a blood draw. Tomlin argues on appeal that there is insufficient evidence that he acted with requisite intent. Because any rational jury could have found Tomlin guilty beyond a reasonable doubt, we affirm his conviction.

## FACTS

On August 18, 2015, Luisa Pedro called the Tacoma Police because she believed that her fiancé, Tomlin, was going to jump off of the Tacoma Narrows Bridge. After detaining Tomlin, the police took him to St. Joseph's Hospital for a mental health and medical evaluation. While in police custody, Tomlin became belligerent and made threats such as: "I could kill you if I wanted to."

At St. Joseph's Hospital, Tomlin was uncooperative. Anna Zinchenko, a nurse working in the hospital's triage center, was tasked with medically clearing Tomlin. This required her to measure Tomlin's vitals, draw his blood for various blood tests, and collect a urine sample. Tomlin refused to cooperate with Zinchenko. Tomlin did not want to change into a gown and insisted that he be allowed to leave. Eventually, hospital security officers restrained Tomlin by strapping him to a gurney. As Zinchenko prepared to draw Tomlin's blood, he spat in her face. After Tomlin left the room to wash her face and hair, hospital security officers put a spit mask (a mesh mask that prevents someone from spitting or biting) on Tomlin.

The State charged Tomlin with one count of third degree assault for spitting on the Zinchenko. A jury found Tomlin guilty as charged. Tomlin appeals.

## ANALYSIS

### Sufficiency of the Evidence

Tomlin argues that there was insufficient evidence that he intended to spit on Zinchenko. We disagree.

When reviewing convictions for sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We draw all reasonable inferences in favor of the State and interpret them most strongly against the defendant. Salinas, 119 Wn.2d at 201. The challenge to the sufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn from it. Salinas, 119 Wn.2d

at 201. We defer to the fact finder on issues of witness credibility. State v. Drum, 168 Wn.2d 23, 35, 225 P.3d 237 (2010).

Tomlin claims that the State failed to prove that he acted with the requisite intent to assault Zinchenko. The jury instructions defined an assault as:

> [A]n intentional touching or striking of another person that is harmful or offensive, regardless of whether any physical injury is done to the person. A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.
>
> An assault is also an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.[1]

Zinchenko testified that as Tomlin was restrained in bed, she tried to move in close in order to apply a tourniquet so she could draw his blood. As she was doing so, Tomlin turned to face her and made a "coughing, gurgling, getting a wet one in the back of your throat type of sound."[2] Zinchenko testified Tomlin "turned and he looked straight at me and he, you know, produced the spit ball and he launched it at the left side of my face."[3]

Zinchenko further testified that, while she had been spit at before during her six years at the hospital, she had never treated a patient who looked directly at her, aimed, and spat in her face. Zinchenko described it as "the most disgusting thing anybody's done to [her] in [her] whole life." She "felt very disgusted [and] violated."

---

[1] Clerk's Papers (CP) at 16 (emphasis added).
[2] Report of Proceedings (RP) (March 17, 2016) at 83.
[3] RP (March 17, 2016) at 82.

-3-

Based on the evidence viewed in the light most favorable to the State, any rational jury could have found that Tomlin acted intentionally beyond a reasonable doubt.

Tomlin asks this court to deny appellate costs. We generally award costs to the substantially prevailing party on review. RAP 14.2. However, when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2. Tomlin was represented below by appointed counsel and the trial court found him indigent for the purposes of this appeal. Under RAP 14.2, if the State has evidence indicating that Tomlin's financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner.

We affirm.

_____

WE CONCUR:

_____  _____