## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52792-8-II |
| Respondent, | |
| v. | |
| KALOB CARL KINDT, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — A jury convicted Kalob Kindt of felony harassment based on a phone call he made to the police. Kindt called the police to report that officers were harassing him. After believing he hung up his phone, Kindt made threats about a police officer, which the police heard.

Kindt argues that insufficient evidence supports his conviction. He contends that under the jury instruction given, insufficient evidence supports the jury's finding that the officer was performing any official duties at the time Kindt made the threat. Kindt also argues that the trial court imposed an unauthorized legal financial obligation (LFO), a court-appointed attorney fee. The State concedes that we should remand for the trial court to strike the LFO.

We affirm the conviction but remand for the trial court to strike the unauthorized LFO.

### FACTS

In July 2017, Deputy Victor Olvera was on shift between 1:00 PM and 11:40 PM. Around 7:45 PM, he tagged an abandoned car as a traffic hazard. Because he lived approximately 4.5 miles away, a nine-minute drive, Olvera decided to go home to see his family and eat dinner. He did not plan to perform any "law enforcement stuff" on his way home. 3 Report of Proceedings (RP) at

474. After tagging the car, Olvera drove on to the road behind a car driven by Kindt's girlfriend. Kindt was a passenger.

Kindt became upset when Olvera began following them because he felt that the police had recently been hassling him. Kindt's girlfriend eventually drove into Kindt's driveway. Olvera never stopped them.

After arriving home, Kindt called 911 to report that the police had been following him, and he requested an officer come speak with him. Kindt thought he had hung up his phone. However, he did not.

Kindt then began speaking to his girlfriend and others who were at the house. Because the 911 operator remained on the line, the police heard Kindt's subsequent statements. Kindt said that the next time he saw the police, he was "so gettin' ready to get a f****** AK and blast him." Ex. 2, at 108. He also said that the "next time [he] talk[ed] to 'em they're gonna to have a f****** gun in their mouth." Ex. 2, at 109.

The 911 operator typed into the police's computer dispatch system what Kindt had said. The dispatch system said that Kindt had made a threat to shoot an officer in the face and put a gun in the officer's mouth.

When he pulled into his driveway at home, Olvera received a radio call. A 911 dispatcher told him that "they received a call of somebody trying to shoot an officer in the face or put a gun into his mouth and blast him." 3 RP at 465. Olvera had exited his car and was about to walk into his house when the dispatcher told him this information. Olvera then told his family he could not stay and left to respond to Kindt's residence. He requested extra police officers.

Olvera and another police officer stopped and talked before proceeding to Kindt's residence. While stopped, the other officer played the actual audio of the call. Olvera was not

"listening [one] hundred percent," but the other officer heard the full audio. 3 RP at 468. Olvera also read what the 911 operator had typed into the police's computer dispatch system. Olvera believed Kindt had directed his threats at him. It caused Olvera to fear for his safety.

The State charged Kindt with two counts of felony harassment.[1] The State alleged that Kindt knowingly threatened to cause Olvera bodily injury, immediately or in the future, which placed Olvera in reasonable fear that the threat would be carried out. The State also alleged that, when Kindt threatened him, Olvera "was performing his or her official duties as a criminal justice participant, and/or, the threat was made because of an action taken or decision made by [Olvera] during the performance of his . . . official duties as a criminal justice participant." Clerk's Papers (CP) at at 13. Kindt pled not guilty, and the case proceeded to trial.

At trial, a Kitsap County Sheriff's Office deputy testified that when officers have take-home patrol cars, they can sign into service as soon as they get into their patrol car. They are deemed to be "in service" until returning home at the end of shift. 3 RP at 410. Similarly, Olvera testified that his department required him to respond to an incident while on shift, even if he was eating.

At the conclusion of the evidence at trial, the court instructed the jury. Relevant here, the court instructed the jury that, to convict Kindt of felony harassment, the jury was required to find, among other elements, "[t]hat Victor Olvera was a criminal justice participant who was performing his official duties at the time the threat was made." CP at 51. The court provided no definitional instruction for "official duties."

---

[1] The court dismissed count two.

3

The jury found Kindt guilty of felony harassment. The court sentenced Kindt to 60 days of confinement. It found Kindt indigent. The court imposed a court-appointed attorney fee on Kindt. Kindt appeals.

## ANALYSIS

I.    SUFFICIENCY OF THE EVIDENCE

Kindt argues that pursuant to the jury instruction given, insufficient evidence supports his conviction because the State failed to prove that Olvera was "performing his official duties" at the time he threatened Olvera. Br. of Appellant at 7. Kindt admits that Olvera was on duty at the time but contends that being on duty is not synonymous with performing an official duty. We disagree.

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010).

By convicting Kindt of felony harassment, the jury found "[t]hat Victor Olvera was a criminal justice participant who was performing his official duties at the time the threat was made." CP at 51. The instruction followed the law. RCW 9A.46.020(2)(b)(iii). Neither the statute nor the instructions given defined "official duties." However, the parties agree that we should look to judicial interpretation of "official duties" as used in the assault in the third degree statute, RCW 9A.36.031(1)(g).

4

Under RCW 9A.36.031(1)(g), a person commits assault in the third degree if they "[a]ssault[] a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault."

In *State v. Mierz*, 127 Wn.2d 460, 479, 901 P.2d 286 (1995), the court "h[e]ld that 'official duties' as used in RCW 9A.36.031(1)(g) encompasses all aspects of a law enforcement officer's good faith performance of job-related duties, excluding conduct occurring when the officer is on a frolic of his or her own." The court noted that an officer is acting in his official duties when making an arrest, even if that arrest later turns out to be unlawful. *Mierz*, 127 Wn.2d at 475; *see also State v. D.E.D.*, 200 Wn. App. 484, 497, 402 P.3d 851 (2017) (similar).

Here, viewing the evidence in the light most favorable to the State, the evidence shows that Olvera was on duty and driving in his police car at the time Kindt made the threats toward him. A Kitsap County Sheriff's Office deputy testified that officers with take-home patrol cars are able to sign into service as soon as they get into their patrol car and that, until an officer returns home at the end of their shift, they are deemed to be in service. Olvera testified that his department required him to respond to an incident while on shift even if he was eating, which he did in this case.

We conclude that, when viewing the evidence in the light most favorable to the State, a reasonable juror could have found that the State had proved all of the essential elements of the crime beyond a reasonable doubt. Accordingly, we reject Kindt's argument.

II.    LFOs

Kindt argues that we should strike the court-appointed attorney fee from his judgment and sentence because of his indigency status.

The court-appointed attorney fee is a discretionary cost. *See In re Pers. Restraint of Dove*, 196 Wn. App. 148, 155, 381 P.3d 1280 (2016). A trial "court shall not order a defendant to pay

costs if the defendant at the time of sentencing is indigent as defined in RCW 10.101.010(3)(a) through (c)." RCW 10.01.160(3).

While it is unclear whether Kindt is indigent under RCW 10.101.010(3)(a)-(c), the State implicitly concedes that the court's inquiry into indigency was inadequate. Therefore, we remand for the trial court to strike the imposition of the court-appointed attorney fee.

We affirm Kindt's conviction but remand for the trial court to strike the court-appointed attorney fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Sutton, A.C.J.

Cruser, J.